# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BONNIE ROBINSON, Independent Administrator of the Estate of Michael J. Robinson, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06-CV-3058 |
| DANIEL MORAN, et al., | ) ) | |
| Defendants. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff's Motion to Enforce Subpoenas Served on the Illinois Department of Corrections (d/e 127) (Motion to Enforce Subpoenas) and Plaintiff's Motion for Sanctions against Defendants Stephen Ruiz and Sandra Funk with Incorporated Memorandum of Law (d/e 134) (Motion for Sanctions). According to Plaintiff's Complaint (d/e 1), Michael Robinson, an inmate of Western Illinois Correctional Center (Western), was killed by his cell mate, Daniel Moran, on March 26, 2004. Plaintiff seeks to enforce subpoenas for documents that were served on the Illinois Department of Corrections. Plaintiff also seeks sanctions against Defendants Stephen Ruiz and

Sandra Funk for alleged discovery violations. For the reasons set forth below, the Motion to Enforce Subpoenas is allowed, in part, and the Motion for Sanctions is denied.

At all relevant times, Ruiz and Funk were employed at Western, Ruiz as a Major and Funk as an Assistant Warden. The information before the Court indicates that Robinson was killed in B Wing of Western's Housing Unit R1. The four wings of Unit R1 are configured in an x-shape and connected in the middle to a circular foyer where a corrections officer monitors a control panel. There are doors leading from the foyer to each wing. According to Funk, the timing of the opening of the door from the foyer into the B Wing would have been electronically recorded. Much of the instant dispute revolves around the existence of a printed "timeline" documenting this information.

It is undisputed that, on April 1, 2004, Funk and Ruiz attended a Labor Management Meeting at Western. Plaintiff has supplied the Court with the redacted minutes from this meeting. Motion for Sanctions, Ex. G. The minutes indicate as follows: "As much as the control panel doesn't work, it did give us an accurate timeline on the incident last Friday. Asst. Warden Funk said this will support our staff if it is ever questioned."

Id., p. 2. Funk testified that she had not actually seen a timeline, but that she understood one existed based on information that someone had told her. Id., Ex. A, Continued Deposition of Sandra Funk (Cont'd Funk Dep.), p. 79-80.

A. Motion to Enforce Subpoenas

Plaintiff's Motion to Enforce Subpoenas deals with subpoenas for documents served on May 15, 2007 and June 12, 2007. Motion to Enforce Subpoenas, Ex. A & B. The May 15, 2007 subpoena requested fourteen categories of documents. The June 12, 2007 subpoena requested "1. the timeline referred to by A/W Zimmerman and A/W Funk in the minutes attached hereto . . . 2. any and all documents related problems [sic] with the new touch screen controls in the housing units . . . ." Id. Ex. B, p. 1.

The Court addressed the Motion to Enforce Subpoenas with the parties in a telephone conference on August 23, 2007. Minute Entry, dated August 23, 2007. The Court granted Plaintiff leave to depose two non-parties Assistant Warden Roger Zimmerman and Ricci Schooler in connection with the timeline requested in the June 12, 2007 subpoena.[1] The Court noted that Attorney Huntley for the Department of Corrections

---

[1] The record reveals that Ms. Schooler is an employee of the company that installed the control panels and/or the computers in the panels in the housing unit.

would review the other document requests, relating to the May 15, 2007 subpoena, and respond by September 15, 2007. The Court directed Plaintiff to file either a motion to withdraw the Motion to Enforce Subpoenas or a status report after deposing Zimmerman.

Zimmerman was deposed on September 6, 2007. On September 17, 2007, Plaintiff filed a Status Report as to Timeline (d/e 141) (Status Report). Plaintiff's Status Report makes no mention of documents requested in the May 15, 2007 subpoena; thus, the Court assumes that Attorney Huntley has responded and that this issue has been resolved. At the conclusion of the Status Report, Plaintiff asks the Court to "order production of the accurate timeline which is a document or printout pulled from the control panel computer showing the opening and closing of the foyer door between the R1 Foyer and the B Wing at Western Illinois Correctional Center on March 26, 2004." Status Report, p. 2-3. As a result, the Court will address the Motion to Enforce Subpoenas only as it relates to this request.

Plaintiff asserts that such a timeline exists or existed at one time. Defendant disputes this, asserting that "[w]ithout a document, there can be no failure to disclose it and no violation of any discovery rule." Response

to Plaintiff's Motion for Sanctions (d/e 136), p. 6.   Plaintiff bases her belief on the reference to a timeline in the minutes from the Labor Management Meeting and on Funk and Zimmerman's testimony.  As previously noted, Funk testified that she had not actually seen a timeline, but that she understood one existed based on information that someone had told her.  Zimmerman, who was the assistant warden in charge of operations at the time of Robinson's death, testified that "there was a printout at one time that corresponded with the wing check log as to the officer going into the wing and doing his check and coming back out because there was a computer printout that showed the door being open and closed."  Plaintiff's Reply to Defendant's Response to Motion for Sanctions against Defendants Stephen Ruiz and Sandra Funk with Incorporated Memorandum of Law (d/e 140), Ex. A, Deposition of Roger Zimmerman, p. 6-7.  Zimmerman explained that the wing check log was a handwritten logbook that was kept to the rear of the wing.  Id., p. 20-21.

   Zimmerman testified that there were two computer printouts, one documenting the opening and closing of the foyer door and one documenting the timing of cell doors opening and closing.  Id., p. 15-16.  According to Zimmerman, both computer printouts were printed within

several hours of Robinson's death from the computer attached to the control panel for Housing Unit R1. Id., p. 19-22. Zimmerman later clarified that the two data compilations may have been in one document. Id., p. 22. Zimmerman was unsure who pulled up the information and printed it, but he stated that he saw a copy at some point between March 26, 2004 and April 1, 2004. Id., p. 20, 24, 61.

Zimmerman testified that he reviewed the printout or printouts and compared the information contained therein to the wing check log. Id., p. 38. According to Zimmerman, the information correlated. Id. At the time of his deposition, however, Zimmerman stated that he did not recall how long corrections officers were on the wing at the time of Robinson's death. Id., p. 41. Zimmerman further explained that the timeline was "an interpretation of the documents and documenting events" and not anything physical. Id., p. 47, 103. Zimmerman testified that he does not recall what happened to the printout or printouts after he reviewed them. Id., p. 50-51. Zimmerman testified that he never saw the printout or printouts again, but he did not recall hearing that they had been lost or destroyed. Id., p. 51.

Thus, it is clear from the evidence that, at one time, a written printout existed documenting the opening and closing of the foyer door between the

control center and Wing B. There is no evidence before the Court regarding the current status of this printout or any efforts that were made to locate it or to ascertain its current status.[2] The Motion to Enforce Subpoena is allowed, in part. Defendants are directed to cause the Illinois Department of Corrections to diligently search its records for the printout. If it is not available, Defendants are directed to cause the Department of Corrections to diligently investigate the cause of its disappearance and any potential for recreating it. This information shall be provided to the Court in sworn statements by individuals with applicable knowledge by November 5, 2007. The Motion to Enforce Subpoenas is denied in all other respects.[3]

---

[2] Assistant Attorney General Kelly Choate for Defendants Funk and Ruiz asserts that "[u]pon information and belief, there is no existing copy of the computer printout referencing the wing door opening to which Mr. Zimmerman referred." Defendants' Response to Plaintiff's Status Report (d/e 143), p. 2. Choate further asserts that "[i]nformation received by Ed Huntley, Chief Legal Counsel of the Illinois Department of Corrections, confirms that the data from March of 2004 is no longer retrievable from the control console computers." Id., p. 3. These responses are not sufficient to establish that the Department made a good faith effort to comply with the subpoena and do not provide sufficient evidence to resolve the questions of the existence or availability of the timeline.

[3] Plaintiff's Motion to Enforce Subpoenas seeks an award of attorney's fees incurred in pursuing the motion. Given the resolution of the motion and the underlying circumstances of the case, the Court does not believe that an award of attorney's fees is appropriate at this point. Plaintiff's request for attorney's fees is denied.

B.  Motion for Sanctions

Plaintiff's Motion for Sanctions seeks sanctions against Defendants Funk and Ruiz based on the failure to disclose the timeline and against Ruiz based on what Plaintiff characterizes as Ruiz's false testimony before the Brown County Coroner's jury and on one inconsistency within the instant case.  The Motion for Sanctions is denied in all respects.

Plaintiff asserts that Funk and Ruiz should be sanctioned for failing to disclose the timeline discussed above.  Plaintiff asserts that the timeline should have been disclosed as a part of Defendant Funk and Ruiz's initial disclosures, quoting Fed. R. Civ. P. 26 (a)(1)(B).  Plaintiff bases this assertion on Funk's opinion that the timeline would support Western staff's actions in connection with Robinson's death.  Rule 26 (a)(1)(B) provides as follows:

> a party must, without awaiting a discovery request, provide to other parties . . . a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

As the Advisory Committee Notes to Rule 26 reveal, the 2000 Amendments to Rule 26 narrowed the initial disclosure obligations under 26(a)(1)(A) and (a)(1)(B)

to identification of witnesses and documents that the disclosing party may use to support its claims or defenses. "Use" includes any use at a pretrial conference, to support a motion, or at trial. The disclosure obligation is also triggered by intended use in discovery, apart from use to respond to a discovery request; use of a document to question a witness during a deposition is a common example. The disclosure obligation attaches both to witnesses and documents a party intends to use and also to witnesses and to documents the party intends to use if--in the language of Rule 26(a)(3)--"the need arises."

A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use. The obligation to disclose information the party may use connects directly to the exclusion sanction of Rule 37(c)(1). Because the disclosure obligation is limited to material that the party may use, it is no longer tied to particularized allegations in the pleadings. Subdivision (e)(1), which is unchanged, requires supplementation if information later acquired would have been subject to the disclosure requirement. As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.

In the instant case, there has been no showing that Defendants Funk or Ruiz intend to <u>use</u> the timeline in any way. Thus, they were not required to disclose it under Fed. R. Civ. P. 26 (a)(1)(B). Because Plaintiff fails to identify any other basis for disclosure, her request for sanctions based on the timeline must fail. Moreover, while Plaintiff cites several cases involving sanctions based on a failure to preserve documents, there is no evidence that Defendants Funk or Ruiz destroyed the printout or that they

ever even laid eyes on it.  Plaintiff's request for sanctions based on Defendants Funk and Ruiz's failure to disclose the timeline is denied.

Plaintiff also seeks discovery sanctions against Ruiz for several alleged instances of perjury.  Plaintiff asserts that Ruiz made numerous false statements to the Brown County Coroner's jury.  <u>See</u> <u>Motion for Sanctions</u>, p. 10.  To support this argument, Plaintiff points to differences between Ruiz's sworn testimony before the coroner's jury and his testimony during his May 30, 2007 deposition in the instant case.  When questioned about the inconsistencies during his deposition, Ruiz conceded that he made "misstatements" during his Brown County testimony.  Plaintiff seeks sanctions herein for these misstatements.  Significantly for purposes of this Motion for Sanctions, however, aside from one instance which the Court will consider infra, Plaintiff does not allege any instances of perjury within the instant case.  Plaintiff cites Fed. R. Civ. P. 11, 26, 30, 33, 34, 37, and 45, which deal with representations and statements made before <u>this Court</u> and as a part of the discovery process in <u>this case</u>.  False statements made to another tribunal prior to the commencement of the instant action may create a separate or additional cause of action, but cannot serve as a basis for discovery sanctions by this Court.  Plaintiff fails to identify any

other basis which would authorize this Court to impose sanctions under these circumstances.  Therefore, Plaintiff's request for sanctions based on allegedly false statements Ruiz made to the Brown County coroner's jury is denied.   However, Plaintiff could use Ruiz's prior statements for impeachment purposes in the instant case, with proper foundation.

Plaintiff points to one inconsistency within the instant case.  In response to a request that Defendant Ruiz produce copies of any and all documents relating to his preparation for testimony before the Brown County Coroner's jury, Defendants' Response to Plaintiff's Requests to Produce stated "Defendant Ruiz will produce the copy of his incident Report of March 26, 2004."  Motion for Sanctions, Ex. I, p. 9.  At his deposition, Ruiz testified that prior to testifying before the coroner's jury he reviewed incident reports from other officers as well as his own incident report.  Id., Ex. C, p. 72-73.[4]  This inconsistency, however, was harmless. Plaintiff does not assert that the additional incident reports that Ruiz claims to have reviewed have not been disclosed in discovery or that she did not have adequate opportunity to depose Ruiz regarding them.  Plaintiff had

---

[4]Plaintiff points out that Ruiz testified before the coroner's jury that he had reviewed the reports of the other officers involved in the investigation.  Motion for Sanctions, Ex. F, p. 5-6.

notice of the additional reports at the very least at the time of Ruiz's May 30, 2007, deposition, which was prior to the July 1, 2007 close of discovery. Therefore, Plaintiff's request for sanctions based on the alleged omission in Ruiz's response to her requests to produce is denied.

THEREFORE, Plaintiff's Motion to Enforce Subpoenas Served on the Illinois Department of Corrections (d/e 127) is ALLOWED, in part, and DENIED, in part. Defendants are directed to cause the Illinois Department of Corrections to diligently search its records for the written printout documenting the opening and closing of the foyer door between the control center and Wing B for the morning of March 26, 2004. If it is not available, Defendants are directed to cause the Department of Corrections to diligently investigate the cause of its disappearance and any potential for recreating it. This information shall be provided to the Court in sworn statements by individuals with applicable knowledge by November 5, 2007. The Motion to Enforce Subpoenas is denied in all other respects. Plaintiff's Motion for Sanctions against Defendants Stephen Ruiz and Sandra Funk with Incorporated Memorandum of Law (d/e 134) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   October 5, 2007

      FOR THE COURT:

                              s/ Byron G. Cudmore
                          _____
                            BYRON G. CUDMORE
                          UNITED STATE MAGISTRATE JUDGE